**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**NORTHERN DIVISION**

**JAMES EWING, Individually and on**
**behalf of all others similarly situated**                                      **PLAINTIFFS**

**v.**                                        **Case No.: 3:19-cv-00232-LPR**

**PIZZA CZAR, INC., &**
**SHANE HOLLOWAY**                                                          **DEFENDANTS**

## <u>ORDER</u>

This Order concerns the propriety of the Settlement Agreement proposed by the parties.[1]

Small changes to the release language and a reduction in attorneys' fees are necessary.  But, with

those changes, the proposed Settlement Agreement is fair, reasonable, adequate, and otherwise

consistent with the requirements of Eighth Circuit precedent, the FLSA, and Rule 23 of the Federal

Rules of Civil Procedure.  Accordingly, and incorporating the necessary changes, the Court

formally and finally approves the proposed Settlement Agreement and will therefore DISMISS the

case with prejudice.[2]

### <u>Findings of Fact with Respect to the Settlement</u>

1.      On August 21, 2019, the named Plaintiff James Ewing filed a Complaint, which

included FLSA and AMWA claims.[3]  In addition to individual claims, the Complaint included

both collective-action and class claims.[4]  The thrust of the Complaint was that Defendants' failure

to adequately reimburse pizza delivery drivers for vehicle expenses resulted in the drivers not

---

[1]   Ex. 1 (Settlement Agreement) to Joint Mot. for Leave to File First Am. Compl., for Rule 23 Class Certification, Prelim. Approval of Class Action Settlement, and Notice to the Settlement Class (Doc. 41-1).

[2]   The Court retains jurisdiction to enforce the terms of the Settlement Agreement.

[3]   Pl.'s Compl. (Doc. 1) ¶¶ 96, 106.

[4]   *Id.* ¶¶ 83–87.

being paid minimum wage.[5]  The Complaint also alleged that Defendants failed to pay the drivers overtime wages.[6]

2.      On October 4, 2019, the parties moved for a stay of the proceedings pending mediation.[7]  The Court granted this motion.[8]

3.      On December 17, 2019 (while the stay was in place), the parties participated in a day-long mediation with Allen Blair, an experienced FLSA class and collective-action mediator.[9] Mediation yielded an agreement between the parties.[10]

4.      On January 10, 2020, the parties filed a Joint Notice of Settlement.[11]

5.      On February 28, 2021, the parties filed a Joint Motion for Preliminary Approval of Class and Collective Action Settlement.[12]

6.      The Court denied this Motion without prejudice, expressing concerns that, at this stage in the litigation, approval would have risked jeopardizing the rights of potential FLSA opt-in plaintiffs and potential Rule 23 opt-out plaintiffs.[13]  The Court suggested that the parties move for conditional certification of an FLSA collective and distribute normal opt-in notices before filing a motion for preliminary approval of a settlement or a motion for certification of a Rule 23 opt-out class.[14]

---

[5]   *Id.* ¶¶ 78–79.

[6]   *Id.* ¶ 80.

[7]   Joint Mot. to Stay Pending Mediation (Doc. 8).

[8]   Oct. 7, 2019 Order (Doc. 9).

[9]   Joint Mot. for Leave to File First Am. Compl., for Rule 23 Class Certification, Prelim. Approval of Class Action Settlement, and Notice to the Settlement Class (Doc. 41) at 15 [hereinafter Joint Mot.].

[10]   *Id.*

[11]   Joint Notice of Settlement (Doc. 11).

[12]   First Joint Mot. for Prelim. Approval (Doc. 15).

[13]   May 21, 2020 Order Den. Prelim. Approval (Doc. 18) at 1.

[14]   *Id.* at 2.

CASE

7.     On August 26, 2020, the parties filed a Joint Stipulation to Conditional Certification of a Collective Action.[15]   The Court held a hearing on this matter on November 19, 2020.[16] Pursuant to the hearing, the Court granted Conditional Certification of a Collective as described in the parties' Joint Stipulation.[17]   The Court lifted the stay in the case and directed the parties to send notice to the potential collective members.[18]

8.     On June 2, 2021, the parties filed a Joint Motion for Leave to File First Amended Complaint, for Rule 23 Class Certification, Preliminary Approval of Class Action Settlement, and Notice to the Settlement Class.[19]

9.     The Motion asked the Court to (1) certify an Arkansas wage and hour class action under Rule 23 of the Federal Rules of Civil Procedure, (2) appoint the Sanford Law Firm as Class Counsel, (3) approve the parties' proposed forms and methods of giving class members notice of the proposed settlement, and (4) direct that notice be given to class members in the proposed forms and manner.[20]

10.    The Court granted the Motion on August 12, 2021.[21]   In the Order granting the Motion, the Court gave leave to the named Plaintiff to file a First Amended Complaint.[22]   The Court certified a Settlement Class pursuant to Federal Rule of Civil Procedure 23 and a Collective pursuant to section 126(b) of the FLSA.[23]   The Court gave preliminary approval of the class-wide

---

[15]  Joint Stipulation to Conditional Certification of a Collective Action (Doc. 21).

[16]  *See* Nov. 11, 2019 Order (Doc. 25).

[17]  *Id.*

[18]  *Id.*

[19]  Joint Mot. (Doc. 41).

[20]  *Id.* at 3.

[21]  Order (Doc. 42).

[22]  *Id.* at 1.  The First Amended and Substituted Complaint, inter alia, added a class-action claim under Missouri law. First Am. & Substituted Compl. (Doc. 46) ¶ 108.

[23]  Order (Doc. 42) at 1.

settlement.[24]  The Court appointed the Sanford Law Firm as counsel for the class and collective.[25]

The Court approved both the Proposed Notice of Class and Collective Action Settlement[26] and the

Final Approval Hearing and Settlement Claim Form.[27]

      11.     All Notice obligations were timely and properly performed by the parties and met

the substantive requirements set out in *Grunin v. International House of Pancakes*.[28]  The Court

has not received any written objections to the proposed Settlement Agreement.

      12.     On December 10, 2021, the Court held a final fairness hearing.[29]  Class counsel

appeared in person, and defense counsel appeared via Microsoft Teams.  No one appeared in

person (or otherwise) to object to the proposed Settlement Agreement.

      13.     At the hearing, defense counsel explained (and class counsel agreed) that the

settlement resulted from an "arm's length negotiation."[30]  Specifically, defense counsel said that

the settlement was "achieved with the assistance of a very experienced mediator[,] Allen Blair[,] .

. . who has done . . . class action work for a long time."[31]  Mediation took one day.[32]

      14.     Based on both sides' representations at the hearing and in the moving papers

seeking final approval, the Court finds that this settlement flowed from a good-faith, arm's-length

negotiation.

---

[24]  *Id.*

[25]  *Id.*

[26]  *See* Ex. 4 to Joint Mot. (Doc. 41-4).

[27]  Order (Doc. 42) at 2.

[28]  513 F.2d 114, 120–22 (8th Cir. 1975).

[29]  Clerk's Mins. for Final Fairness Hr'g (Doc. 51).

[30]  Dec. 10, 2021 Hr'g Tr. at 8.

[31]  *Id.*

[32]  *Id.*

15.     Class counsel explained that this type of case, which involves vehicle-expense reimbursement to delivery drivers, has developed into a "subgenre" of FLSA cases.  Within the subgenre, counsel represented, the fight comes down to the proper metric for deciding the amount a delivery driver should be reimbursed for vehicle expenses.[33]

16.     Plaintiffs in this type of case usually take the position that employers should (1) "track and pay the actual expenses of the driver" or (2) pay the IRS vehicle reimbursement rate.[34]

17.     Defendants in this subgenre argue that employers are "allowed to reasonably approximate vehicle expenses."[35]

18.     According to the parties, neither the Eighth Circuit nor any other Circuit has decided on a metric by which to gauge expense reimbursement.[36]  No specific metric has gained traction in the district courts either.[37]

19.     Given this uncertainty, both parties faced appreciable risk by proceeding to trial in this case.

20.     Additionally, given the absence of a set method of determining vehicle-expense reimbursement, getting to trial would have required the parties to conduct extensive discovery to cover the waterfront.  Such discovery would have (at the least) required the parties to retrace hundreds of drivers' mileage, investigate the model years of their cars (in case reimbursement varied by that factor), and engage experts to opine on the reasonable amount of reimbursement (possibly one driver at a time).[38]  Sussing out this issue on a class or collective scale would have

---

[33]  *Id.* at 3.

[34]  *Id.* at 5.

[35]  *Id.* at 5–6.

[36]  *Id.* at 3, 6.

[37]  *Id.* at 3; *see also id.* at 6 (Defendants' counsel suggesting some district court cases supporting their position before acknowledging the uncertainty in this area of the law).

[38]  *See id.* at 4, 6 (discussing the possibility of engaging experts and differentiating between model years to determine

necessitated the expenditure of "a lot of time, effort and resources."[39]   Absent settlement, expert fees alone would have been significant in this case.

21.    Approximately 20–25% of the 367 potential class members have returned claim forms and will thus share in a "Net Class Settlement Fund of $19,750" based on a formula.[40]

22.    Class members who filed claim forms will receive 100% of their share of the settlement.[41]   Drivers captured by the class definition who have not opted out and have not somehow indicated interest in participating in this case still get something—pursuant to a settlement provision dedicating a nominal payment for such drivers.[42]

23.    Defense counsel has handled this subgenre of FLSA cases nationwide.[43]   Defense counsel indicated that this settlement falls in line with a number of settlements in similar cases.[44] Class counsel similarly indicated that the settlement is consistent with settlements in this type of case.[45]   The Court finds that this settlement falls in the heartland of FLSA class settlements involving vehicle-reimbursement claims.

24.    At the hearing, the Court expressed some concern respecting release language found on the checks that were supposed to go out to the class members.   The release on the check states:

---

reimbursement rates).

[39]   *Id.* at 7.

[40]   Dec. 10, 2021 Hr'g Tr. at 10; Joint Mot. (Doc. 41) at 17; *see also* Ex. 1 (Settlement Agreement) to Joint Mot. (Doc. 41-1) ¶19.

[41]   Dec. 10, 2021 Hr'g Tr. at 10.  When the Court refers to class members, that necessarily includes drivers who opted into the collective.  *See* Joint Mot. (Doc. 41) at 18 (explaining that opt-in plaintiffs need not submit a claim form to participate in the recovery).

[42]   *Id.*; *see also* Ex. 1 (Settlement Agreement) to Joint Mot. (Doc. 41-1) ¶ 37(a).

[43]   Dec. 10, 2021 Hr'g Tr. at 5.

[44]   *Id.* at 7.

[45]   *Id.* at 8.

By signing and cashing or otherwise negotiating this check I release all claims or causes of action I have against the Released Parties in the lawsuit styled James Ewing v. Pizza Czar, Inc. et al., Case No. 3:19-cv-00232-LPR (the "Action") arising out of or relating to facts asserted in the Action, including claims arising under the FLSA, Arkansas and Missouri wage and hour law, or any similar federal, state, municipal, or local laws, such as mileage reimbursement claims, meal and rest break claims, and dual jobs claims.[46]

The Court was worried about the language releasing "meal and rest break claims."[47]  The Court did not believe that these types of claims were embraced by the Complaint.

25.     The parties have agreed to remove the language releasing such claims.  With that change, the Court finds that the scope of the release for the check and for the release appearing in Section V of the proposed Settlement Agreement is appropriate and tracks the claims in this lawsuit.

## Conclusions of Law with Respect to the Settlement

1.      The proposed Settlement Agreement is "fair, reasonable, and adequate,"[48] and the Van Horn v. Trickey factors counsel in favor of approving the settlement.[49]

2.      The single most important factor is a weighing of the merits of the Plaintiffs' case against the terms of the settlement.  This subgenre of FLSA law (vehicle-expense reimbursement) presents lots of uncertainty.  Both sides agree (and the Court concludes) that no Eighth Circuit authority explains the method by which vehicle-expense reimbursement must be calculated before determining whether the interplay between reimbursement and wages paid results in a violation of the FLSA or other states' wage and hour statutes.  Other Circuits' caselaw is similarly sparse on

---

[46]  Ex. 1 (Settlement Agreement) to Joint Mot. (Doc. 41-1) ¶ 44(i).

[47]  Dec. 10, 2021 Hr'g Tr. at 12.

[48]  Fed. R. Civ. P. (23)(e)(2).

[49]  840 F.2d 604, 607 (8th Cir. 1998) ("The district court must consider a number of factors in determining whether a settlement is fair, reasonable, and adequate: the merits of the plaintiff's case, weighed against the terms of the settlement; the defendant's financial condition; the complexity and expense of further litigation; and the amount of opposition to the settlement.").

the relevant point.  Uncertainty breeds risk.  Plaintiffs in no way have a slam dunk here.  It is possible that, at trial or on summary judgment, the Defendants could establish a reimbursement rate that significantly differs from the rate Plaintiffs contend is applicable.  If that happened, Plaintiffs' theory of the case would likely vanish, and along with it, any chance of recovery.  Considering that risk, a nearly $20,000 recovery for class members is more than fair.

       3.       The Defendants' financial condition is a factor to be considered.  The Court notes that Defendants operate "pizza delivery establishments under the name Domino's Pizza in Pocahontas and in West Plains, Missouri."[50]  The Defendants can afford to pay this sum as a settlement (indeed, they could have afforded to pay more).  But the Defendants could also have afforded to continue litigating; had they done so, it is possible that Defendants would have prevailed, and Plaintiffs would have taken nothing.  The Defendants' financial condition is either a neutral factor or slightly leans in favor of approving the settlement.

       4.       The complexity and expense of further litigation is a factor to be considered.  With respect to complexity, further litigation would have presented an unsettled question in the FLSA realm (vehicle-reimbursement rates).  So while this case has not been unusually complex so far, it is not a run-of-the-mill wage and hour case.  And later stages of the litigation likely would have been complex.  With respect to expense, no one doubts that continuation of the litigation would have resulted in significant expense.  The parties would have had to extend significant resources to argue their respective sides as to the proper vehicle-reimbursement metric.  Such briefing would have necessarily entailed the use of expert opinion.  Experts don't come cheap.  Moreover, in addition to paying for their own expert opinions, the parties would have incurred significant

---

[50]  First Am. & Substituted Compl. (Doc. 46) ¶ 7.

expense in paying for depositions of the other side's experts.  Settlement for this amount was a reasonable alternative.

5.      Opposition or lack of opposition to the proposed Settlement Agreement is another factor for consideration.  This factor strongly favors approving the proposed Settlement Agreement because no objections have been lodged.

6.      The Court is somewhat reluctantly going to accept the $5,000 service award to Mr. Ewing.  It seems a little high, especially given the amount that other drivers will likely receive under the terms of the settlement.  However, the amount of the service award is not so high as to be unreasonable.  It strikes a balance between incentivizing whistleblowing and not incentivizing meritless accusations.

7.      For the foregoing reasons, except for the release language (discussed *supra*) and the attorneys' fees issue (discussed *infra*), the Court concludes that the proposed Settlement Agreement is fair, reasonable, and adequate.  Given the changes to the release language and the reduction in fees contemplated by this Order, the Court formally and finally approves the Settlement Agreement.

## **Attorneys' Fees and Costs**

Class counsel ("SLF") wants $41,667.00 in attorneys' fees and costs.[51]  As part of the proposed Settlement Agreement, Defendants essentially agreed to this figure.[52] If this were simply a settlement of a FLSA individual or collective action, the Court would not scrutinize the reasonableness of the agreed-upon attorneys' fees.[53]  But this settlement also involves Arkansas

---

[51]  Ex. 1 (Settlement Agreement) to Joint Mot. (Doc. 41-1) ¶ 34.

[52]  *Id.*

[53]  *See Barbee v. Big River Steel, LLC*, 927 F.3d 1024, 1027 & n.1 (8th Cir. 2019) (holding that a district court lacked authority under the FLSA to review settled attorney fees when liability and fees were separately negotiated).

Minimum Wage Act and Missouri Minimum Wage Law Rule 23 classes.  Federal Rule of Civil Procedure 23(h) contemplates the Court awarding "reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement."  Rule 23(h) thus tasks the Court with determining the reasonableness of the attorneys' fees in this case.  As such, the Court requested[54] and SLF filed a separate Motion for Costs and Attorneys' Fees.[55]  For the reasons discussed below, the Court will reduce the attorneys' fees payment set forth in the proposed Settlement Agreement.

The Eighth Circuit says that "[c]ourts utilize two main approaches to analyzing a request for attorney fees."[56]  Under the lodestar approach, "the hours expended by an attorney are multiplied by a reasonable hourly rate of compensation so as to produce a fee amount which can be adjusted, up or down, to reflect the individualized characteristics of a given action."[57]  Under the "percentage of the benefit" approach, a court can award fees equal "to some fraction of the common fund that the attorneys were successful in gathering during the course of the litigation."[58]  The Eighth Circuit gives the Court discretion to determine which approach to follow.[59]  The Court concludes that the lodestar approach is the prudent choice.  Here's why.

In the proposed Settlement Agreement, SLF is set to receive $41,667 in attorneys' fees and costs.[60]  SLF contends that this amount represents one-third of a common fund of $125,000.[61]  The

---

[54]  Order (Doc. 42) at 3.

[55]  Mot. for Costs and Att'ys' Fees (Doc. 44).

[56]  *Keil v. Lopez*, 862 F.3d 685, 701 (8th Cir. 2017) (quoting *Johnston v. Comerica Mortg. Corp.*, 83 F.3d 241, 244 (8th Cir. 1996)).

[57]  *Id.* (internal quotations omitted) (quoting *Johnston*, 83 F.3d at 244).

[58]  *Id.*

[59]  *Id.*

[60]  Ex. 1 (Settlement Agreement) to Joint Mot. (Doc. 41-1) ¶ 34.  The Court notes that this is the same amount set out in the first proposed settlement agreement SLF filed on March 16, 2020 (about seven months after filing the original Complaint).  *See* First Settlement Agreement (Doc. 17) ¶ 34.

[61]  Br. in Supp. of Mot. for Costs and Att'ys' Fees (Doc. 45) at 3.

proposed Settlement Agreement defines "Total Settlement Fund" as "the amount of One Hundred

Twenty-Five Thousand and 00/100 Dollars . . . ."[62]  But this amount appears to serve only one

function—to create an inflated, arbitrary starting point enabling SLF to land on the amount of fees

it wanted to receive.  Indeed, a caveat set out in the "Total Settlement Fund" definition says that

"Defendants' gross aggregate payments under this Agreement shall not under any circumstances

exceed the 'Maximum Settlement Amount.'"[63]  The "Maximum Settlement Amount" is $78,917.[64]

Because the "percentage of the benefit" SLF seeks is predicated upon a contrived amount

($125,000), the Court will use the lodestar approach to determine a reasonable attorneys' fee.

Under that approach, the Court begins with calculating the lodestar—the reasonable hourly

rate times the reasonable hours expended.  The Court also "may consider relevant factors listed in

*Johnson v. Georgia Highway Express* . . . ."[65]  The *Johnson* factors include:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3)
> the skill requisite to perform the legal service properly; (4) the preclusion of other
> employment by the attorney due to acceptance of the case; (5) the customary fee;
> (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client
> or the circumstances; (8) the amount involved and the results obtained; (9) the
> experience, reputation, and ability of the attorneys; (10) the "undesirability" of the
> case; (11) the nature and length of the professional relationship with the client; and
> (12) awards in similar cases.[66]

SLF's Motion for Costs and Attorneys' Fees seeks the amount identified in the proposed

Settlement Agreement ($41,667).[67]  SLF documents $39,824.05 in attorneys' fees.[68]  Specifically,

---

[62]  Ex. 1 (Settlement Agreement) to Joint Mot. (Doc. 41-1) ¶ 28.

[63]  *Id.*

[64]  *Id.* ¶ 17.

[65]  *Keil*, 862 F.3d at 701.

[66]  *Hensley v. Eckerhart*, 461 U.S. 424, 434 n.3 (1983).

[67]  *See* Br. in Supp. of Mot. for Costs and Att'ys' Fees (Doc. 45) at 17 (stating that the "agreed fee of $41,667.00 is
reasonable").

[68]  Ex. 2 (J. Sanford Decl.) to Mot. for Costs and Att'ys' Fees (Doc. 44-2) at 6.

SLF seeks fees for the following activities: Case Management ($2,290 for 11.85 hours); Client Communication ($1,775.90 for 9.7 hours); Collective Certification ($917.90 for 3.8 hours); Complaint/Summons/Service ($2,242.40 for 9.2 hours); Court Communication ($607.20 for 1.7 hours); In House Communication ($9,314.20 for 37.8 hours); Management of Collective ($622.40 for 7.1 hours); Opposing Counsel Communication ($5,341.75 for 17.95 hours); Rule 23 Certification ($841.50 for 3.8 hours); and Settlement Related ($13,150.70 for 53.7 hours).[69]  For hourly rates, SLF requests $300 an hour for Anna Stiritz; $210 an hour for Courtney Lowery; $383 an hour for Josh Sanford; $100.00 an hour for Paralegal; $175 an hour for Samuel Brown; $250 an hour for Stacy Gibson; $60 an hour for Staff; $285 an hour for Steve Rauls; $220 an hour for Thomas Odom; and $300 an hour for Vanessa Kinney.[70]

        "As a general rule, a reasonable hourly rate is the prevailing market rate, that is, 'the ordinary rate for similar work in the community where the case has been litigated.'"[71]  In the case at bar, the requested hourly rates for the attorneys exceed the prevailing market rate.  Judges in the Eastern and Western Districts of Arkansas routinely reject as unreasonable hourly rates of $300+ for Mr. Sanford and $200+ for more junior attorneys.[72]  Based on its experience and knowledge of the local market and this District's precedent, the Court finds the following rates to be reasonable: $250 an hour for Sanford and Stiritz; $175 an hour for Kinney, Gibson, and Rauls;[73]

---

[69] *Id.* at 13–14.

[70] Br. in Supp. of Mot. for Costs and Att'ys' Fees (Doc. 45) at 8–9.

[71] *Beauford v. ActionLink, LLC*, No. 4:12-cv-00139-JLH, 2014 WL 183904, at *3 (E.D. Ark. Jan. 15, 2014) (quoting *Moysis v. DTG Datanet*, 278 F.3d 819, 828 (8th Cir. 2002)).

[72] *See Bonds v. Langston*, No. 3:18-cv-00189, 2021 WL 4130508, at *3 & n.26 (E.D. Ark. Sept 9, 2021) (lowering the rates of Mr. Sanford and Ms. Stiritz to $250 an hour and lowering the rates of Ms. Kinney and Ms. Gibson to $175 an hour) (collecting cases); *Wright v. Tyler Technologies*, No. 4:20-cv-00454-KGB, 2021 WL 4255287, at *2 (E.D. Ark. Sept. 17, 2021) (observing that Eastern and Western District judges have repeatedly rejected a $325 per hour rate for Mr. Sanford).

[73] The Court notes that Mr. Rauls and Ms. Kinney both have been litigating FLSA cases for about ten years.  Ex. 2 (J. Sanford Decl.) to Mot. for Costs and Att'ys' Fees (Doc. 44-2) at 6–7.

$150 an hour for Odom; $125 an hour for Lowery and Brown;[74] and $100.00 an hour for any

Paralegal.  The Court rejects any billing related to Staff.[75]

The chart below takes as a given the time that SLF says that each attorney spent on this

case.  The chart then multiplies that time by what the Court has concluded is a reasonable rate for

each attorney.  In this way, the chart comes up with the Total Value of SLF's asserted working

time.  That amount is $25,822.50.

| Biller | Time | Reasonable Rate | Value |
|---|---|---|---|
| Anna Stiritz | 1.10 | $250 | $275 |
| Courtney Lowery | 37.10 | $125 | $4,637.50 |
| Josh Sanford | 24.35 | $250 | $6,087.50 |
| Paralegal | 15.30 | $100 | $1,530 |
| Samuel Brown | 11.50 | $125 | $1,437.50 |
| Stacey Gibson | 30.5 | $175 | $5,337.50 |
| Staff | 8.35 | $0 | $0 |
| Steve Rauls | 26.50 | $175 | $4,637.50 |
| Thomas Odom | 1.80 | $150 | $270 |
| Vanessa Kinney | 9.20 | $175 | $1,610 |
| **Totals** | 165.7 | N/A | $25,822.50 |

**(Chart 1)**

But we're not done.  The second step in determining the lodestar entails determining the

reasonable amount of time spent by SLF working the case.  Ordinarily, this analysis requires the

Court to go line by line through billing entries to gauge the reasonableness of the time spent on a

given activity.  Fortunately (though likely accidentally), SLF provided the Court with a chart that

can streamline the analysis.  That chart suggests that SLF believes that about 60% of its actual

[74] Ms. Lowery has been litigating FLSA cases since 2019.  *Id.* at 6–7.  Mr. Brown has been litigating FLSA cases since 2020.  Due to their limited inexperience, the Court concludes that $125 an hour is a reasonable rate for these attorneys.  *See Huffman v. Assoc. Mgmt. Ltd.*, No. 4:20-cv-01296-BRW, 2021 WL 3122338, at *4 (E.D. Ark. July 22, 2021) (setting $125 an hour as the reasonable rate for Ms. Lowery and Mr. Brown).

[75] *See Beauford*, 2014 WL 183904, at *4. ("Secretaries' salaries come within a firm's overhead.  Secretarial work on a case should not be billed to a client, nor to an opposing party in a fee-shifting case.") (internal quotation marks omitted).

time spent on the case was "reasonable" for purposes of the lodestar analysis.  Let's take a look at

the chart.[76]

| Category | Actual Time | Actual Value | Time Claimed |
|---|---|---|---|
| Case Management | 11.85 | $2,229.00 | 2.9 |
| Client Communications | 9.70 | $1,775.90 | 8.6 |
| Collective Certification | 3.80 | $917.90 | 3.60 |
| Complaint/Summons/Service | 9.20 | $2,232.40 | 7.80 |
| Court Communication | 1.70 | $607.20 | 1.20 |
| Fee Petition | 9.10 | $2,730.00 | 4.90 |
| In House Communication | 37.80 | $9,314.20 | 8.60 |
| Management of Collective | 7.10 | $622.50 | 3.40 |
| Opposing Counsel Communication | 17.95 | $5,341.75 | 10.85 |
| Rule 23 Certification | 3.80 | $841.50 | 3.80 |
| Settlement Related | 53.70 | $13,150.70 | 44.20 |
| **Grand Total** | 165.70 | $39,824.04 | 99.85 |

**(Chart 2)**

The "Time Claimed" column represents what SLF would have requested in a lodestar

analysis.  This reduced number (compared to "Actual Time") shows what SLF itself considers to

be a reasonable amount of time spent on activities.  The Court concludes that the "Time Claimed"

column presents the reasonable expenditures of time for this case.[77]  The significant reductions

---

[76]  Br. in Supp. of Mot. for Costs and Att'ys' Fees (Doc. 45) at 13–14.

[77]  It is possible, indeed likely, that a line-by-line review of SLF's billing would result in a larger cut to SLF's fees. For instance, SLF has repeatedly been admonished for overstaffing, which contributes to excessive intraoffice communications.  *See, e.g.*, *Hill-Smith v. Silver Dollar Cabaret, Inc.*, No. 5:20-cv-5051, 2020 WL 4741917, at *3 (W.D. Ark. Aug. 14, 2020) ("[SLF] may choose to have Mr. Sanford personally oversee every aspect of run-of-the-mill motion practice requiring no court appearance, but it will not be permitted to pass the associated costs of doing so on to Defendants."); *Beasley v. Macuil's Tire & Serv. Ctr., LLC*, No. 4:19-cv-00471, 2020 WL 3472556, at *2 (E.D. Ark. June 25, 2020) ("The time records are replete with instances of objectionable billing practices, including an excess of intraoffice communications, duplicate document reviews by multiple lawyers, billing at lawyers' rates for clerical work, etc.").  SLF deployed eight lawyers on this case.  "While the Court understands how having many lawyers on a single case can be strategic—each may have their own unique expertise like SLF claims—staffing [8] attorneys on a case will inevitably lead to significant inefficiencies and unnecessary and duplicative work.  SLF can't pass costs incurred as a result of overstaffing on to [Defendants]."  *Langston*, 2021 WL 4130508, at *4.  Micromanagement costs should also not be borne by Defendants.  But that's what SLF is doing here.  Take Mr. Sanford.  He had 216 billing entries totaling 24.35 hours.  Ex. 1 (Billing Entries) to Mot. for Costs and Att'ys' Fees (Doc. 44-1) at 1–37.  The lion's share of those entries relates to intraoffice communications (about 40 entries) and the "[e]xamination" of various emails and filings (about 139 entries).  *Id.*  Mr. Sanford's billing shows excessive (unreasonable) micromanagement.  This is especially true considering Mr. Rauls, who billed 26.50 hours, was the lead attorney on this case.  Br. in Supp. of Mot. for Costs and Att'ys' Fees (Doc. 45) at 8.  The reality on the ground bears this out.  Mr. Rauls was the senior attorney for Plaintiffs at the telephonic

14

shown in Chart 2 (about a 40% difference between "Actual Time" and "Time Claimed") are appropriate.[78]  In other words, 60% of the time SLF spent working the case was reasonable.

In light of the foregoing steps, to determine the lodestar in this case, the Court will multiply the Total Value derived after adjusting SLF's rates in Chart 1 ($25,822.50) by 60%.  This gets us to a lodestar of $15,493.50.  And because litigation on this case was neither simple nor extremely complex, no further adjustment based on the *Johnson* factors is necessary.

With respect to costs, SLF requests $4,849.30.[79]  The Court will award the full cost request to SLF.

## Conclusion

For the foregoing reasons, the proposed Settlement Agreement is approved with exceptions noted above.  Specifically, the release language is hereby altered as discussed in this Order.  And SLF is only entitled to $20,342.80 in attorneys' fees and costs.  This case will be DISMISSED with prejudice.[80]

---

conference the Court conducted on November 19, 2020.  Ex. 1 (Billing Entries) to Mot. for Costs and Att'ys' Fees (Doc. 44-1) at 18.  Mr. Rauls was the only attorney for Plaintiffs at the final fairness hearing.  Dec. 10, 2021 Hr'g Tr. at 1.  Mr. Rauls was up to the task of this case without additional help from above.  Mr. Rauls "has personally worked on hundreds and hundreds of wage lawsuits and [has] given helpful advice on case strategy and the finer points of FLSA law to over a dozen attorneys."  Br. in Supp. of Mot. for Costs and Att'ys' Fees (Doc. 45) at 6.  Given this level of experience, it was not reasonable for Mr. Sanford to continuously look over Mr. Rauls's shoulders (and bill almost as much time as Mr. Rauls did).  The Court is confident that Mr. Rauls could handle reviewing *pro hac vice* applications or notices of appearance unaided by Mr. Sanford.  *See* Ex. 1 (Billing Entries) to Mot. for Costs and Att'ys' Fees (Doc. 44-1) at 2 (Mr. Sanford billing for "[e]xamination of PHV motion" and "[e]xamination of NOA").  The Court is also confident that a deep dive into SLF's billing would warrant a greater time reduction than is illustrated on the above chart (Chart 2) provided by SLF.

[78]  To reach this percentage, the Court divided 99.85 (the "Time Claimed") by 165.7 (the "Actual Time").  This equaled about 60%.

[79]  Br. in Supp. of Mot. for Costs and Att'ys' Fees (Doc. 45) at 16.

[80]  The Court retains jurisdiction to enforce the terms of the settlement.

IT IS SO ORDERED this 2nd day of March 2022.

_____
LEE P. RUDOFSKY
UNITED STATES DISTRICT JUDGE